## JONES vs. CARY.

The election of the moderator of a parish meeting will be valid, though the meeting was called to order, and the votes were received and declared, by a private parishoner, who assumed that authority to himself.

Ceasing to attend the religious and secular meetings of a parish, and attending the worship and supporting the ministers of another denomination, for any length of time, will not alone amount to a renunciation of membership in the parish thus left; the only mode of withdrawing, without a change of residence, being by notice in writing, as provided in *Stat.* 1821, *ch.* 135.

A subscription to raise money for the support of public worship whenever a minister of a particular sect could be procured, is not the formation of an unincorporated religious society, within *Stat.* 1811, *ch.* 6.

THIS was an action of the case, brought to recover damages against the defendant as moderator of a meeting of the first parish in *Turner*, for refusing the plaintiff's vote in the choice of a clerk.

At the trial before *Parris J.* the plaintiff proved that the defendant presided in the meeting, and refused his vote, as alleged in the writ. He also proved that his father was a member of the parish ; in whose family he resided till he came of age in 1810 ; that both his father and himself were taxed by the parish in 1811, which was the last parish tax which had been assessed ; which tax they had paid ; and that in 1825, he, with others, applied as a member of the parish, to a magistrate, to call a parish-meeting, which was granted. It also appeared that in 1805, a universalist society was incorporated in *Turner*.

On the part of the defendant it was proved that at the opening of the meeting in question, the parish clerk was not present ; that the defendant, as chairman of the parish committee, claimed and exercised the right to preside at the choice of moderator of the meeting ; another member of the committee being present, and not objecting. It also appeared that the plaintiff had not been in the habit of attending public worship with the parish, since their new meeting house was built in 1819 ; though he had occasionally done so before ; that he owned nothing in the new meeting house ; that he

had not attended the parish meetings of the first parish till the meeting in 1825, at which his vote was rejected by the defendant; nor did the parishioners generally attend such meetings; that after the incorporation of the universalist society he usually attended its meetings for religious worship; that sometime previous to the year 1825, he united with others in a subscription paper to raise money to procure the stated services of a universalist preacher, professing therein their belief in the doctrine of the final restoration of all men; and that since that time he, with sundry others, had contributed to the completion of the universalists' meeting-house in *Turner.*

Upon this evidence the defendant contended that the plaintiff had become a member of an unincorporated religious society, within the meaning of *Stat.* 1811, *ch.* 6, commonly called the religious-freedom-act; and therefore had lost his membership in the first parish. And if not, that the evidence sufficiently showed such a dissent to being a member of the parish, as discharged him therefrom, under the *Stat.* 1821, *ch.* 135. But the judge ruled otherwise; and a verdict was returned for the plaintiff, subject to the opinion of the court upon the questions raised at the trial.

*Greenleaf* and *Fessenden* argued for the defendant. 1. The only person having authority to preside at the opening of a parish meeting, and choice of a moderator, is the parish clerk. This appears from a similar provision in *Stat.* 1821, *ch.* 114, *sec.* 1, respecting town meetings; and from the law which gives the moderator of parish meetings the same power, as in towns. He must therefore be chosen in the same manner. But in the present case the moderator was not so chosen, and the meeting was consequently illegally conducted, and the transactions merely void.

2. The parish-act of 1821 created no new corporators; but left the rights of membership as they stood before; which were regulated by the *Stat.* 1786, *ch.* 10, restricting the right of voting to those persons who paid a poll tax and a further sum equal to two thirds of a poll tax. So far as this provision is concerned, this statute is not repealed. And the case does not show that the plaintiff was thus qualified to vote.

3. If he ever was a parishioner, the acts of the plaintiff were suf-

ficient evidence of renunciation of that character, within the spirit of *Stat.* 1821, *ch.* 135. By this statute, membership is founded on contract, the party having the power of recision. The leaving of a written notice with the clerk is not made the only mode of divesting one's self of membership. It is only a method provided to avoid taxation. By any other equivalent acts, membership may be renounced. - And here the conduct of the plaintiff was not to be mistaken.

4. The act of the plaintiff in subscribing to the support of a universalist preacher, is evidence, in connexion with the other proof in the case, of membership in " an unincorporated religious society," within the terms of *Stat.* 1811, *ch.* 6, sufficient to protect him against any claim of the first parish to tax him ; and if so, to bar his right to vote in their parish affairs. *Waite v. Merrill,* 4 *Greenl.* 102, was a case of such a contract, in principle, as this.

*N. Emery* and *Dana* for the plaintiff.

WESTON J. delivered the opinion of the Court, at the ensuing *July* term in *Waldo.*

The defendant objects to his liability in this action, because the parish clerk did not preside at the meeting, when he was chosen moderator. We do not find any thing in the law requiring this. The town clerk is to preside in the choice of moderator in town meetings ; but there is no corresponding provision in the act concerning parishes, either directly, or by reference to the act regulating town meetings. The defendant, as chairman of the parish committee, opened the meeting, by reading the warrant, and called for and received the votes for moderator. His standing in the parish, justified his thus taking the first step, in the organization of the meeting. And if any other member of the parish had called the meeting to order, and had received and declared the votes for moderator, we doubt not the election would have been lawful. The acquiescence of the members generally in this assumption on the part of an individual, is indicated by their submission to his call, and proceeding to vote accordingly. We are all satified that this objection was properly overruled at the trial.

It sufficiently appears that the plaintiff had been a member of the first parish in *Turner*, and we find nothing in the case, by which his connexion with that parish was dissolved. He did not become a member of any other religious society, corporate or unincorporate, in the mode prescribed by the act of Massachusetts, respecting public worship and religious freedom, *Stat.* 1811, *ch.* 6, which was in force prior to the passage of the act of this State concerning parishes; nor in the mode prescribed by that act. Our statute provides that no person shall be compelled to join or be classed with any parish or religious society, without his or her consent; and the most perfect freedom in withdrawing from any such parish or religious society is given by the statute; but the mode of withdrawing is expressly pointed out; and it is a regulation which ought to be enforced; otherwise the greatest uncertainty would exist, as to the persons who may be entitled to the rights, or subject to the liabilities of membership. The mode is easy, simple and definite. It is by leaving a written notice with the clerk of the society, from which the party is desirous of seceding. We are clearly of opinion that it does not appear, from the facts reported, that the plaintiff became a member of any other religious society, under the statute of Massachusetts of 1811, or that he has withdrawn himself from the first parish in *Turner*, under the statute of this State.

It has been instisted in argument, that the right of the plaintiff to vote, in point of qualification, depends on the statute of Massachusetts of 1786, *ch.* 10, and it is contended that it has not been repealed in this State. Without going into a consideration of this question, we deem it sufficient to remark, that it was not raised at the trial, nor has it been reserved by the judge, or brought before us by any exception taken by counsel. It is a point not open to the defendant upon the report of the judge.

*Judgment on the verdict.*